# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# Richmond Division

| | |
|---|---|
| JENNIFER L. LYNCH, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : Civil Action No. 3:24-cv-440 |
| | : |
| EQUIFAX INFORMATION SERVICES, LLC, | : |
| | : |
| Defendant. | : |

## COMPLAINT

Plaintiff Jennifer L. Lynch files this Complaint against Defendant Equifax Information Services, LLC and alleges as follows:

## PRELIMINARY STATEMENT

1. Congress enacted the Fair Credit Reporting Act ("FCRA") to protect consumers from the devastating impacts of inaccurate credit reporting. S. Rep. No. 91-517, at 1 (1969) (explaining that the FCRA was intended to "prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report"); *see also Guimond v. Trans Union Credit Info.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (explaining that the FCRA was enacted "to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner" (citations omitted)).

2. The statute's express purpose is for "consumer reporting agencies [to] adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with

regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. 1681(b).

3. Even so, inaccurate credit reporting is still a pervasive, long-standing issue for consumers. For example, in 2012, the FTC published a reporting finding that twenty percent of consumers who participated in its study had at least one error on their credit report.[1] Almost ten years later, the situation was even worse: a 2021 study found that more than 34 percent of surveyed consumers identified at least one error on their credit reports.[2]

4. Here, Plaintiff's Equifax report included inaccurate—or, at a minimum, misleading—information relating to one of her credit accounts after she filed for Chapter 7 bankruptcy.

5. Specifically, Equifax reported the same Petal Card, Inc. account *twice* in Plaintiff's credit report.

6. In one place, Plaintiff's credit report reflected, correctly, that Plaintiff had filed for Chapter 7 bankruptcy and that the Petal account was subject to that proceeding. The second reporting of the same account, however, did not reference the bankruptcy.

7. When Plaintiff disputed the double reporting of the Petal account with Equifax, Equifax failed to adequately investigate her disputes or remove the inaccurate information from her credit report.

---

[1] *See* Fed. Trade Comm'n, *Report to Congress Under Section 319 of the Fair and Accurate Credit Transactions Act of 2003*, at 64 (Dec. 2012), https://www.ftc.gov/sites/default/files/documents/reports/section-319-fair-and-accuratecredit-transactions-act-2003-fifth-interim-federal-trade-commission/130211factareport.pdf.

[2] *See* Syed Ejaz, Consumer Reports, *A Broken System: How the Credit Reporting System Fails Consumers and What to Do About It* (June 10, 2021), https://advocacy.consumerreports.org/wp-content/uploads/2021/06/A-Broken-System-How-the-Credit-Reporting-System-Fails-Consumers-and-What-to-Do-About-It.pdf.

8. In fact, even after Plaintiff's debts were discharged in bankruptcy, Equifax reported that Plaintiff was past due by several months and that she owed several thousand dollars. This reporting existed despite Equifax's acknowledgement elsewhere in the same report that the debt had been discharged in bankruptcy.

9. As a result, Plaintiff alleges that Equifax violated the FCRA, § 1681e(b), by failing to reasonably ensure the maximum possible accuracy of her credit reports. *See Burke v. Experian Info. Sols., Inc.*, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (breaking down the requirements of § 1681e(b) and explaining that "'assure' means to make sure or certain: put beyond all doubt, 'maximum' means the greatest in quantity or highest degree attainable, and 'possible' means something falling within the bounds of what may be done, occur or be conceived" (cleaned up) (quoting *Webster's Third New International Dictionary* 133, 1396, 1771 (1993))).

10. Separately, Plaintiff alleges that Equifax violated the FCRA, §1681i, by failing to fully investigate her disputes.

## JURISDICTION AND VENUE

11. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in this District and Division, and a substantial part of the events giving rise to Plaintiff's claims occurred here.

## PARTIES

13. Plaintiff Jennifer L. Lynch is a natural person residing in this District and Division.

14. Defendant Equifax is a foreign limited liability company with a principal place of business in Atlanta, Georgia. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

15. Plaintiff's husband is a disabled veteran.

16. In 2023, Plaintiff's husband was not receiving his disability income, which forced Plaintiff to carry the family's financial burden.

17. Plaintiff was unable to do so on her income alone, and she and her husband fell behind on several debts.

18. In need of a fresh start, Plaintiff and her husband filed for bankruptcy in the Bankruptcy Court for the United States District Court for the Eastern District of Virginia (the "Bankruptcy Court") in August 2023.

19. During the pendency of the bankruptcy, Plaintiff learned that Equifax was reporting her Petal account twice.

20. That reporting confused Plaintiff because she only had one account with Petal, and that account was included in the bankruptcy.

21. At that time, Plaintiff believed that Equifax must had been reporting an account that did not belong to Plaintiff because her credit report indicated that her Petal account was included in Chapter 7 bankruptcy.

22. In reality, the same Petal account was being reported twice—once with reference to the Chapter 7 bankruptcy, and once without.

23. Plaintiff disputed that reporting to Equifax twice in late October 2023.

24. Plaintiff explained that she had filed for bankruptcy and that her Petal account was included in the bankruptcy.

25. Despite Plaintiff's disputes and her explanation, Equifax verified its reporting, relying on Petal's investigation results and neglecting to conduct any other investigation into Plaintiff's dispute.

26. As a result, the inaccurate information about the Petal account remained on Plaintiff's Equifax report.

27. On or about December 4, 2023, the Bankruptcy Court discharged Plaintiff's debts, including the Petal account that Plaintiff identified in the bankruptcy.

28. The Bankruptcy Court provided notice of that discharge on or about December 6, 2023.

29. Even after the discharge, the Petal account remained on Plaintiff's Equifax credit report as two separate tradelines.

30. In one place, the account was identified as being discharged.

31. But in another, Equifax reported it in an amount approaching $3,000.

32. Equifax reported that the status of the debt was "90-119 Days Past Due" and that Plaintiff was past due by $408.

33. Still hoping to fix the issue, Plaintiff disputed the account with Petal through the Better Business Bureau in January 2024.

34. Plaintiff's submission indicated that the Petal account on her Equifax credit report was reporting inaccurately and that her only Petal account had been discharged in bankruptcy.

35. In response, Petal acknowledged that the reporting was inaccurate.

36. The double reporting, nonetheless, continued.

37. Because the double reporting remained on Plaintiff's Equifax report, Plaintiff disputed it with Equifax several more times in January 2024.

38. On each occasion, Equifax simply verified the debt as belonging to Plaintiff, ignoring the crux of the disputes and the fundamental double reporting issue.

39. In February, Plaintiff submitted three more disputes to Equifax.

40. But Equifax again simply verified the account as belonging to Plaintiff on each occasion.

41. The inaccurate and misleading information about the Petal account, therefore, remained on Plaintiff's Equifax credit report, where it was reported for several months.

42. Plaintiff, consequently, was unable to start her financial life anew following her bankruptcy.

43. At a date unknown, Equifax finally updated its reporting to show that the only Petal account on Plaintiff's report was "INCLUDED_IN_BANKRUPTCY."

44. As a result of Equifax's conduct, Plaintiff has suffered significant actual damages, including a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

### *Equifax's Lacking Procedures Willfully Violated the FCRA*

45. At all times relevant to this lawsuit, Equifax's conduct was willful and carried out in knowing or reckless disregard for Plaintiff's rights under the FCRA. Equifax's conduct was intentionally accomplished through its intended procedures; these procedures have continued even though other consumer reporting agencies have faced court decisions and consumer complaints critical of similar conduct; and Equifax will continue to engage in this conduct because it believes there is greater economic value in maintaining its current procedures than in providing accurate reports.

46. Equifax takes no action to determine whether accounts are reported twice when preparing reports of consumers who have filed for Chapter 7 bankruptcy. This failure is unreasonable and willful.

47. If Equifax had reasonable procedures to ensure that the information it published about consumers who have filed for Chapter 7 bankruptcy was as accurate as possible, it would not have double reported the Petal account on Plaintiff's report.

48. Equifax takes no action to determine whether it reports double report consumer accounts when it prepares consumer credit files. This failure is unreasonable and willful.

49. If Equifax had reasonable procedures to ensure that the information it published about consumers in bankruptcy was as accurate as possible, it would have reported Plaintiff's Petal account only once, and it would have indicated that the account was subject to or discharged in Chapter 7 bankruptcy.

50. Equifax understands the FCRA's requirement that the information it reports about consumers must be as accurate as possible and that its failure to have procedures in place avoid double reporting violates the FCRA. Equifax knew or had reason to know that its conduct conflicted with FTC and CFPB guidance, case law, and the plain language of the FCRA.

### *Equifax's Investigations Willfully Violated the FCRA*

51. As a standard practice, Equifax does not conduct independent investigations in response to consumer disputes. Instead, it merely parrots the response of the furnisher despite several court decisions admonishing this practice. *See, e.g.*, *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information

is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

52. Upon information and belief and consistent with its standard policies and procedures, Equifax automatically generated its "investigation" results once Petal verified the status of the account. Equifax did not take any extra actions to verify the accuracy of the information that the furnisher provided it.

53. Instead, Equifax blindly accepted Petal's version of the facts and continued to report the inaccurate, derogatory information on Plaintiff's credit report.

54. Equifax continues the practice of parroting the furnisher's response despite several lawsuits alleging (and establishing) that they fail to conduct a reasonable investigation under the FCRA.

55. Equifax does not intend to modify its dispute-processing procedures because doing so would drastically increase its operating expenses.

56. As a result, at all times relevant to this Complaint, Equifax's conduct was willful and carried out in reckless disregard for a consumer's rights under the FCRA. By example only and without limitation, its conduct was willful because it ran a risk of harm that was known, or so obvious it should have been known, by failing to implement any procedure to identify and correct these common errors before furnishing reports.

**COUNT ONE:**
**VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)**
**(EQUIFAX)**

57. Plaintiff incorporates the preceding allegations.

58. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files that it published and maintained.

59. Because of Equifax's conduct, Plaintiff suffered actual damages, including, without limitation, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

60. Equifax's conduct in violating § 1681e(b) was willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

61. In the alternative, Equifax was negligent, entitling Plaintiff to a recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i
## (EQUIFAX)

62. Plaintiff incorporates the preceding allegations.

63. Equifax violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate in violation of § 1681i(a)(1); (2) failing to provide Petal with all the relevant information about Plaintiff's disputes in violation of § 1681i(a)(2); (3) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (4) failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A).

64. Because of Equifax's violations of §1681i, Plaintiff suffered actual damages, including, but not limited to, a reduced credit score, inability to obtain credit, embarrassment, humiliation, and emotional distress.

65. Equifax's violations of § 1681i were willful, rendering it liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees under 15 U.S.C. § 1681n.

66. In the alternative, Equifax was negligent, entitling Plaintiff to a recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff moves for statutory, actual, and punitive damages as pleaded, as well as her attorneys' fees and costs against Equifax; for prejudgment and post-judgment interest at the legal rate, and any other relief the Court considers just, equitable, and proper.

Respectfully submitted,

**JENNIFER L. LYNCH**

*/s/ Kristi C. Kelly*
Kristi C. Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
Casey S. Nash, VSB #84261
J. Patrick McNichol, VSB #92699
Matthew G. Rosendahl, VSB # 93738
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com
Email: aguzzo@kellyguzzo.com
Email: casey@kellyguzzo.com
Email: pat@kellyguzzo.com
Email: matt@kellyguzzo.com

*Counsel for Plaintiff*